UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES and SHARON
HUTCHINSON,

       Plaintiffs,

   v.

DELAWARE SAVINGS BANK FSB,
et al.,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 04-4809
(JEI)


**OPINION**


**APPEARANCES:**

MILDENBERG & STALBAUM, P.C.
BY: Sherri J. Braustein, Esq.
1845 Walnut Street, 22nd Floor
Philadelphia, PA 19103
    Attorneys for Plaintiff

MORGAN, LEWIS & BOCKIUS LLP
BY: Meredith B. Trzcinski, Esq.
502 Carnegie Center
Princeton, NJ 08540
    Attorneys for Defendants Delaware Savings Bank FSB, Aurora
    Loan Servicing, Inc., and Mortgage Electronic Registration
    Systems, Inc.


**IRENAS**, Senior District Judge:

    Plaintiffs James and Sharon Hutchinson, husband and wife,

bring the present suit against the Defendants, a lender and two

loan servicing companies, asserting claims under federal and New

Jersey law arising out of the refinancing of the Hutchinson's

home mortgage.  The Defendants move to dismiss the complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I.

In 1998, Plaintiffs lived at 6987 Harding Highway, Mays
Landing, New Jersey.  The property was subject to a primary
mortgage under which Plaintiffs owed $74,500 to Norwest Mortgage
at an interest rate of 9.9%.  Because the Hutchinsons carried
over $41,500 in additional debt (primarily credit card debt),
they responded to an advertisement offering to refinance their
existing mortgage to consolidate their debt "into one low monthly
payment with a 'low' interest rate."  (Amend. Compl. ¶ 16)

Plaintiffs and Defendant Delaware Savings Bank ("DSB")
closed new mortgage loans on September 30, 1998.  The parties
executed two separate notes and mortgages, one loan in the
principal amount of $76,000 ("Loan One") and the other in the
principal amount of $42,750 ("Loan Two").  The interest rates on
the loans were 9.55% and 14.5% respectively.  In connection with
the two loan transactions, DSB collected fees totaling $6,356.50,
which were financed into the loans.

Plaintiffs allege that DSB engaged in predatory lending by
misrepresenting the "benefits, qualities, characteristics, risks

---

[1]  We have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and
1367(a).

and costs" associated with the loans. (Pls.' Opp. Br. at 2)  In particular, Plaintiffs assert that they requested and were promised one loan, not two, and that DSB deceptively split the loan so that they could charge double fees.  They also allege that DSB created and used a false Loan Two HUD-1 statement which reported that Plaintiffs received $29,171.21 cash at closing when they actually only received $478.21.

Allegedly as a direct result of the "onerous and unconscionable" terms of the loans (id.), Plaintiffs filed Chapter 13 bankruptcy on November 9, 2001.  While the Chapter 13 Plan provided for the cram-down of a third mortgage to zero, it left the Loan One and Two obligations of the parties unaffected. Plaintiffs had no pre-petition arrearages with respect to either Loan One or Two at the time they filed bankruptcy.  Subsequently, their Chapter 13 case was converted to a Chapter 7 bankruptcy and Plaintiffs were forced to surrender their home.

Plaintiffs assert three state law claims against DSB (the "origination claims"): (1) fraud; (2) breach of contract; and (3) violation of New Jersey's Consumer Fraud Act.  With respect to all three claims DSB moves to dismiss asserting that: (a) the claims are precluded by the Plaintiffs' Chapter 13 reorganization plan pursuant to 11 U.S.C. § 1327(a); (b) Section 348(f) of the Bankruptcy Code precludes the claims; and (c) the Plaintiffs lack standing to assert claims belonging to the bankruptcy trustee.

3

DSB also challenges the fraud counts as insufficient under Fed. R. Civ. P. 9(b)'s heightened pleading requirement.

Plaintiffs' troubles continued after they received a Chapter 7 discharge of their personal obligations under the loans. According to Plaintiffs, the loan servicing companies, Defendants Aurora Loan Services ("Aurora") and Mortgage Electronic Registration Systems ("MERS")[2] unlawfully continued their attempts to collect on Loan Two.[3]

Aurora and MERS continued to send Plaintiffs collection notices and reported to credit bureaus that Plaintiffs' mortgage payments were late even though the debt was discharged. Plaintiffs assert that Aurora and MERS acted in bad faith by misrepresenting to Plaintiffs that they still owed loan payments and attempting to assess various late fees.

Plaintiffs and their bankruptcy counsel asked Aurora through "qualified written requests" pursuant to the Real Estate Settlement Procedures Act ("RESPA"), to cease sending mortgage statements.  Allegedly, Aurora failed to respond or take appropriate action to investigate and / or correct the problem and continued to report late mortgage payments to credit reporting bureaus in violation of RESPA.

---

[2]   DSB and the loan servicing companies have a contractual relationship, the specific nature of which is unclear from the parties' submissions.

[3]   The Amended Complaint also asserts that Green Tree Servicing LLC unlawfully attempted to collect on Loan One, however, the parties have settled all the claims against Green Tree.

4

Plaintiffs assert three claims against both Aurora and MERS and an additional claim against Aurora only (the "servicing claims").  Against both Aurora and MERS they assert: (1) negligent servicing of Loan Two; (2) breach of contract; and (3) violation of New Jersey's Consumer Fraud Act ("NJ CFA").  Against Aurora only, Plaintiffs assert a RESPA claim.  Aurora and MERS move to dismiss, asserting that: (a) Plaintiffs have failed to state claims with respect to all counts, and (b) the state law claims are preempted by the Fair Credit Reporting Act ("FCRA").[4]

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, the court will accept as true all of the factual allegations contained in the complaint and any reasonable inferences that can be drawn therefrom.  *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).  Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Although the court must assume as true all facts alleged, "[i]t is not . . . proper to assume that the [plaintiff]

---

[4] Plaintiffs do not assert any FCRA claim.

can prove any facts that [are] not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Finally, when "confronted with a [12(b)(6)] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Pennsylvania v. PepsiCo., Inc.*, 836 F.2d 173, 179 (3d Cir. 1988) (emphasis added).

### III.

#### A.

First, we address DSB's contention that Plaintiffs' origination claims against DSB are precluded by 11 U.S.C. § 1327(a).  The issue is whether Plaintiffs' voluntary conversion of their Chapter 13 bankruptcy to a Chapter 7 bankruptcy obviates the res judicata effect of the confirmed Chapter 13 plan.  We hold that it does.

Section 1327(a) provides that "[t]he provisions of a confirmed [chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  Section 1327(a) generally codifies the doctrine of res judicata with respect to confirmed Chapter 13 plans.  *See In re Szostek*, 886 F.2d 1405, 1408 (3d

6

Cir. 1989)("Under § 1327 a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation.").[5]  "Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of

---

[5]  We question whether the confirmed Chapter 13 plan, even absent conversion, would necessarily preclude the Plaintiffs from asserting their origination claims against DSB.  While DSB cites various authorities for the proposition that the confirmed Chapter 13 plan precludes Plaintiffs' claims, no authority is directly on point.

DSB principally relies on *Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869 (2d Cir. 1991)-- a Chapter 11 case-- which held that lender liability claims asserted by a plaintiff / debtor were barred by res judicata because the confirmed Chapter 11 plan did not list the lender liability claims.  We agree with the Second Circuit that the dispositive issue in deciding the plan's preclusive effect is "whether an independent judgment in a separate proceeding would 'impair or destroy rights or interests established by the judgment in the first action.'"  *Id.* at 874 (quoting *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133 (2d Cir. 1975)).  In *Sure-Snap*, the Chapter 11 plan specifically dealt with how the debtors would repay State Street, the lender.  Indeed, State Street was the proponent of the plan.  By contrast, the Chapter 13 plan in this case made no provision for paying the mortgages to DSB which were left unaffected by the plan.

The Second Circuit reasoned that "appellants' failure to raise these claims (if valid) when they should have, almost certainly affected [the Chapter 11 plan].  Had the bankruptcy court found merit in appellants' lender liability claims, it probably would have structured a different disposition or schedule of payments."  *Id.* at 876.  The court suggested, for instance, that if the bankruptcy court found that the lenders had indeed acted inequitably (as was alleged), the bankruptcy court could have either subordinated all or part of the lenders' allowed claims or ordered the lenders' liens securing their subordinated claims transferred to the estate.  *Id.*

The case before this Court is both factually and legally distinguishable.  As described above, unlike the Chapter 11 plan in *Sure-Snap*, the Chapter 13 plan here does not address how DSB will be paid.  Also, as a general matter, Chapter 13 cases differ from Chapter 11 cases in their practical operation under the Bankruptcy Code and in the differing public policies underlying individual consumers' adjustment of debts on one hand, and corporate reorganization on the other.  We decline to address *Sure-Snap*'s application, if any, to Chapter 13 cases, however, because we hold that the Chapter 7 conversion in this case obviates any res judicata effect the Chapter 13 plan may or may not have had in the first place.

the same transaction or occurrence as the claim in the earlier one." *Mattson v. Hawkins (In re Hawkins)*, 231 B.R. 222, 229 (D.N.J. 1999).

Plaintiffs concede that they did not list their origination claims (or any disputes regarding Loan Two) in their Chapter 13 schedules but they assert that the omission is inconsequential because the causes of action they now pursue are listed on their Chapter 7 schedules.[6] They reason that the order confirming the Chapter 13 plan was not a final judgment because the plan was converted to a Chapter 7 case. DSB steadfastly asserts that because the Chapter 13 plan was confirmed, res judicata bars the origination claims, regardless of the Chapter 7 conversion.

The case law on this issue is sparse. However, Plaintiffs' analysis is supported by the small amount of authority the Court has uncovered.

*In re Shaffer,* the seminal case on this issue, involved a Chapter 13 bankruptcy which the debtors subsequently converted to a Chapter 7 case. 48 B.R. 952, 953 (Bankr. N.D. Ohio 1985). The Chapter 13 plans provided that creditors' liens on debtors' household goods would be avoided. *Id.* After conversion to Chapter 7, the creditors sought to enforce their liens

---

[6] Plaintiffs moved the bankruptcy court to reopen their Chapter 7 case and subsequently amended their schedules to include the origination claims after Defendants first moved to dismiss the complaint. This Court denied without prejudice the first motion to dismiss the complaint pending the outcome in the bankruptcy court.

notwithstanding the Chapter 13 plans.  *Id.*  The debtors asserted that res judicata precluded enforcement of the liens because the issue had been decided upon confirmation of the Chapter 13 plan. *Id.* at 956.

The court, squarely addressing the issue "whether the orders confirming the Chapter 13 plans are final judgments on the merits of the actions for purposes of res judicata," held that the orders were not final.  *Id.*  Reasoning that a Chapter 13 plan confirmation "at best, [] operates as only a provisional determination of [the debtors' and creditors'] rights" and that a "final determination occurs only upon the order denying or granting a discharge," the court refused to give res judicata effect to the Chapter 13 plans.  *Id.* at 956.  The court held, "[i]n the present case where the debtors have converted to Chapter 7, the court concludes that the doctrine of res judicata does not bind the creditors to the terms of the now abandoned Chapter 13 plan."  *Id.* at 957.

Other courts have relied upon *Shaffer* in reaching similar conclusions about the non-binding effect of Chapter 13 plans. For example, in *Elliott v. ITT Corp.*, the district court held that a confirmed Chapter 13 plan had no binding res judicata effect on either party once the debtors voluntarily abandoned their Chapter 13 case.  150 B.R. 36, 40 (N.D. Ill. 1992).  In that case, the plaintiff alleged that the defendant ITT, who

9

loaned the plaintiff $2000, deceived her into purchasing insurance that she did not want as part of the loan transaction. *Id.* at 38.  The defendants moved for summary judgment asserting that the plaintiff's Chapter 13 bankruptcy schedules, which were confirmed, did not disclose her claim against ITT, and in fact listed the debt as "'current and to be paid direct.'"  *Id.*  The defendants asserted that summary judgment should be granted based on res judicata and/or judicial estoppel,[7] even though the plaintiff voluntarily dismissed her Chapter 13 case.  *Id.* at 39. Relying on *Shaffer*, the court held that "[o]nce a debtor dismisses the [Chapter 13] action, the confirmation of the plan is vacated and without res judicata effect."  *Id.* at 40.[8]

Based on the foregoing, we hold that Plaintiffs' confirmed Chapter 13 plan was not a final judgment and had no binding effect upon conversion to a Chapter 7 case.  Therefore DSB's motion to dismiss based on 11 U.S.C. § 1327(a) will be denied.

---

[7]  In its reply brief, DSB raises, for the first time, judicial estoppel as a basis for dismissal.  We decline to apply judicial estoppel in this case for the reasons articulated in the *Elliott* opinion.  *See Elliott*, 150 B.R. at 40.  We also note that the bankruptcy court rejected a similar judicial estoppel argument when it reopened Plaintiffs' Chapter 7 case.  *See In re Hutchinson*, No. 01-21001, slip op. at 7-10 (Bankr. D.N.J. May 17, 2005).

[8]  *See also In re Pearson*, 214 B.R. 156, 161 (Bankr. N.D. Ohio 1997) (recognizing "the nonbinding effect of Chapter 13 plan" in a case where debtors filed a notice of conversion from a Chapter 13 to Chapter 7 case); 3-1327 Collier Bankruptcy Manual P 1327.02 ("The res judicata effect of confirmation may be eliminated only if confirmation is revoked, or if the case is later dismissed or converted to another chapter."); Norton Bankruptcy Law and Practice 2d § 122:12 ("Res judicata does not apply, however, when a confirmed plan has been dismissed, or when the case is converted to a case under Chapter 7.").

B.

Next, in a variation on their res judicata argument, DSB asserts that Section 348(f)(1)(B) of the Bankruptcy Code, which governs the effect of a Chapter 7 conversion, binds Plaintiffs to the value of their estate as stated in their Chapter 13 plan, which did not include the origination claims.

Section 348(f)(1)(B) states, "valuations of property . . . in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to that extent that they have been paid in accordance with the chapter 13 plan."  11 U.S.C. § 348(f)(1)(B)(2001).[9]  Thus if the value of property was adjudicated during the Chapter 13 proceedings, the property retains that valuation in the Chapter 7 estate.  *See In re Drew*, 325 B.R. 765, 773 (Bankr. N.D. Ill. 2005) (§ 348(f)(1)(B) "lock[s] in" valuations of property in the Chapter 13 case and "appl[ies] those values in a converted case (usually a Chapter 7).").

In this case, however, the value of Plaintiffs' claims against DSB was never determined in the Chapter 13 case because, as DSB is quick to point out, the claims were not listed on the Chapter 13 bankruptcy schedules.  Therefore, Section 348

---

[9]  A 2005 amendment to this subsection altered its language to explicitly exclude Chapter 13 to Chapter 7 conversions from coverage.  However the amendment does not apply in this case because Plaintiffs' bankruptcy case was commenced before the amendment's effective date.  *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (2005) (effective in cases commenced on or after October 17, 2005).

11

(f)(1)(B), which presupposes valuation in the Chapter 13 case, is simply inapplicable to this case.  *See In re Kuhlman,* 254 B.R. 755, 758 (Bankr. N.D. Cal. 2000) (when property at issue was never valued in the Chapter 13 case the court held § 348(f) "not applicable to this situation."); *see also In re Jackson,* 317 B.R. 511, 513 (Bankr. N.D. Ill. 2004)(holding that confirmation of the Chapter 13 plan was not an implicit valuation of the property at issue and as such § 348(f)(1)(B) did not apply because the property's value was not established in the Chapter 13 case); *contrast Warren v. Peterson,* 298 B.R. 322, 325 (N.D. Ill. 2003) ("This Court holds that an order confirming a chapter 13 bankruptcy plan is an implicit valuation *of the scheduled property*.")(emphasis supplied); *In re Page*, 250 B.R. 465, 466 (Bankr. D.N.H. 2000) ("the Court finds that relying on the *value of the property as scheduled* in the confirmation process is, in fact, the valuation for purposes of section 348(f).") (emphasis supplied).[10]

Accordingly, DSB's motion to dismiss based on 11 U.S.C. § 348(f) will be denied.

---

[10]   As these cases indicate, there is a split of opinion regarding whether confirmation of a Chapter 13 plan is an implicit "valuation" of the scheduled property for purposes of § 348(f)(1)(B).  The claims at issue here, however, were never scheduled, thus they were never even arguably valued by implication.

C.

DSB also challenges Plaintiffs' common law fraud and NJ CFA claims as insufficient under Fed. R. Civ. P. 9(b).  Rule 9(b) states: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Thus "plaintiffs must plead with particularity the 'circumstances' of the alleged fraud." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998).  Pleading the "date, place or time" of the fraud, is not necessary so long as plaintiffs use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).  The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges.  *Rolo*, 155 F.3d at 658 (quoting *Seville*).

DSB contends that Plaintiffs' allegations are insufficient because they do not identify the date and time of the alleged fraudulent conduct and do not identify the speaker of the alleged misrepresentations.  (Def. Br. at 30)

Plaintiffs allege that "using fraudulent material misrepresentation and/or knowing disclosure, DSB induced Plaintiffs to enter into a mortgage loan that unreasonably placed their home at risk of foreclosure."  (Amend. Compl. at ¶ 105)  Plaintiffs further specifically allege that:

> DSB intentionally misrepresented and/or omitted a material facts [sic] to Plaintiffs to wit: that the loan was beneficial when it was not, that their fees were usual and customary when they were not, and that their fees were a part of the finance charge and/or amount financed, when they should have been party [sic] of some other figure, and that certain amounts were due and owing when they were not.

(Id. at ¶ 106)

Even further, Plaintiffs specifically allege that DSB "created and utilized a conflicting HUD-1 settlement statement for Loan 2" and attach two facially conflicting HUD-1 statements to their complaint.  (Id. ¶¶ 30-34)  They point to specific numbers on the documents that they allege misrepresent amounts disbursed to them.  (Id. at ¶ 32)

We hold these allegations sufficient.  While Plaintiffs do not explicitly identify a certain day upon which the alleged misrepresentations were made, they do allege that the initial communications they had with DSB occurred "in or around September 1998" and that the closing was held "on or about September 30, 1998."  (Id. at ¶¶ 15, 19)  Since Plaintiffs plainly allege that agents of DSB made misrepresentations which induced them into entering into the loan transaction, logic dictates that the fraudulent misrepresentations had to have occurred sometime in September, 1998.

Additionally, while Plaintiffs do not identify by name the individuals alleged to have made the representations, they have attributed the statements and/or omissions to DSB.

14

These facts suffice to meet Rule 9(b)'s particularity requirements.  Therefore DSB's motion to dismiss on this ground will be denied.

D.

Lastly, the Court declines to dismiss the origination claims for lack of standing.[11]  The Chapter 7 trustee will be joined as a Plaintiff against DSB pursuant to Fed. R. Civ. P. 25(c).

Pursuant to Rule 25(c), "[i]n a case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."  Fed. R. Civ. P. 25(c).  When, as here, Plaintiffs' causes of action vest in the bankruptcy trustee after the initiation of the lawsuit,[12] Rule 25(c) ensures that the proper person litigates the claims.  *See Bauer v. Commerce Union Bank*, 859 F.2d 438, 441-42 (6th Cir. 1988) (noting that district court did not abuse its discretion by ordering bankruptcy trustee substituted as plaintiff pursuant to Rule 25(c) in debtor's tort action); *In re James*, 120 B.R. 802, 808 (E.D. Pa. 1990), *rev'd on other grounds by* 940 F.2d 46 (3d Cir.

---

[11]  At oral argument on the present motion, defense counsel withdrew the standing objection.

[12]  The claims became property of the Chapter 7 estate when the bankruptcy court granted Plaintiff's motion to amend their Chapter 7 schedules in May, 2005.  The instant suit was initiated on September 30, 2004.

15

1991),("Procedurally, the court is duly authorized to join or substitute the Trustee as party plaintiff pursuant to Fed. R. Civ. P. 25(c).  Indeed, Fed. R. Civ. P. 17(a)[13] encourages such action . . . In light of Rules 25(c) and 17(a) . . . the bankruptcy court acted properly in denying the motion to dismiss and in joining the Trustee as a necessary plaintiff.").

Accordingly, the Chapter 7 trustee, as successor in interest to Plaintiffs' origination claims against DSB, may pursue those claims.  The Court will order the Chapter 7 Trustee, Brian S. Thomas, Esq., joined as a plaintiff against DSB.

E.

In the first of their servicing claims, Plaintiffs allege that Aurora failed to respond to Plaintiffs' qualified written requests and continued to report late loan payments to credit reporting bureaus in violation of their duties under RESPA.  *See* 12 U.S.C. § 2605(e) ("Duty of loan servicer to respond to borrower inquiries").  Aurora challenges the Amended Complaint's RESPA allegations as legally insufficient because Plaintiffs have failed to allege actual damages and proximate causation.

First, the Amended Complaint alleges sufficient facts

---

[13]  "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."  Fed. R. Civ. P. 17(a).

16

constituting a breach of RESPA duties.  Once a borrower makes a
"qualified written request," RESPA requires loan servicing
companies to: (a) provide written notice to the borrower
acknowledging receipt of the request; (b) take appropriate action
with respect to the inquiry either by making corrections or
providing a written explanation or clarification; and (c) protect
the borrower's credit rating by not reporting to credit bureaus
the overdue payments relating to the request for 60 days after
receiving the request.  12 U.S.C. § 2605(e).  Plaintiffs assert
that:

>  Plaintiffs as well as their bankruptcy counsel sent
>  numerous qualified written requests to Defendants
>  Aurora . . . however, Defendants never responded.
>  . . . Specifically, on or about August 15, 2003,
>  Plaintiffs by and through their counsel sent a
>  'qualified written request' to Aurora requesting
>  that it cease sending mortgage statements to
>  Plaintiffs.  Despite this 'request' and Plaintiffs'
>  Chapter 7 discharge Aurora continued to send
>  Plaintiffs statements and continued to report
>  delinquent payments to the credit bureaus.

(Amend. Compl. at ¶¶ 76-78)  Thus, Plaintiffs have alleged a
RESPA violation.

     However, alleging a breach of RESPA duties alone does not
state a claim under RESPA.  Plaintiffs must, at a minimum, also
allege that the breach resulted in actual damages.  *See* 12 U.S.C.
§ 2605(f)(1)(A) ("Whoever fails to comply with this section shall
be liable to the borrower . . . [for] any actual damages to the
borrower as a result of the failure."); *Cortez v. Keystone Bank*,

17

No. 98-2457, 2000 U.S. Dist. LEXIS 5705 at *40 (E.D. Pa. May 2, 2000)(a claimant under 12 U.S.C. § 2605 must allege a pecuniary loss attributable to the alleged violation).

We hold that Plaintiffs have sufficiently pled actual damages resulting from the breach of RESPA duties.  Aurora allegedly reported Plaintiff's delinquent Loan Two payments to credit bureaus during the 60 day statutory period after it received Plaintiffs' qualified written request.  As a result of these negative reports, Plaintiffs allege that they suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing." (Amend. Compl. at ¶ 89)  Thus Plaintiffs' inability to obtain further financing allegedly flowed directly from Aurora's breach of its duty under 12 U.S.C. § 2605(e)(3) to refrain from reporting the late payments to credit bureaus.  As the court in *Cortez* held, "denial of credit because of the reporting of [delinquent charges] to credit reporting agencies" can sustain a claim of actual damages[14] under RESPA.  *Cortez*,

---

[14]  It is unclear whether "actual damages" under RESPA encompasses emotional distress.  The district courts are split and no Court of Appeals has addressed the issue.  *See, e.g., Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 814-16 (N.D. Ill. 2001)(concluding that RESPA plaintiffs may recover for mental suffering); *Ploog v. Homeside Lending, Inc.*, 209 F. Supp. 2d 863, 870 (N.D. Ill. 2002) (following *Johnstone*); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1166 (M.D. Ala. 1999) ("'actual damages' [under RESPA] . . . encompass mental anguish damages."); *contra Katz v. Dime Savings Bank, FSB*, 992 F. Supp. 250, 255-56 (W.D.N.Y. 1997) (concluding that Congress did not intend actual damages to encompass emotional distress); *In re Tomasevic*, 273 B.R. 682, 687 (M.D. Fla. 2002)("Actual damages are limited to economic pecuniary injury.")(following *Katz*); *see generally* George S. Mahaffey, Jr., *A Product of Compromise: Why Non-Pecuniary Damages Should Not Be Recoverable under Section 2605 of the Real Estate Settlement Procedures*

2000 U.S. Dist. LEXIS 5705 at *39-40.  Accordingly, Aurora's motion to dismiss the RESPA claim will be denied.

F.

Next, Plaintiffs assert three state law claims against both Aurora and MERS: negligence / intentional tort,[15] breach of contract, and violation of NJ CFA.  Defendants assert that all three of Plaintiffs' state law claims are preempted by the Fair Credit Reporting Act ("FCRA") and also fail to state claims.  We will address Plaintiffs' state law claims together as the Court's analysis is applicable to all three.

Plaintiffs advance two theories of injury: (1) damages flowing from Aurora and MERS's delinquency reports to credit bureaus, and (2) damages flowing from Aurora and MERS's attempts to collect on Loan Two.  Specifically, Plaintiffs maintain that Aurora and MERS acted unreasonably and in bad faith by failing to respond to Plaintiffs' qualified written requests and continuing their attempts to collect on Loan Two after receiving notice of

---

*Act*, 28 U. Dayton L. Rev. 1 (2002)(analyzing RESPA's legislative history and case law interpreting statute).  Because we hold that Plaintiffs in this case have stated a claim under RESPA independent of their allegations of emotional distress, the Court declines to decide at this stage of the litigation whether Plaintiffs may recover damages for emotional distress in addition to damages for pecuniary loss.

[15]   Count III of the Amended Complaint is entitled "negligent servicing," however Plaintiffs assert that Aurora and MERS "knew or should have known that improperly servicing Plaintiffs' account would result in damages to Plaintiffs and thereby acted recklessly and negligently."  (Am. Compl. ¶ 118).  Thus we interpret Count III as encompassing both intentional and negligent conduct.

Plaintiffs' Chapter 7 bankruptcy discharge.[16]  Plaintiffs claim that as a result of these actions, (which they assert constitute negligence, breach of contract, and violations of NJ CFA) they "suffered damages including the loss of their home, negative credit ratings on their credit reports, the inability to obtain and borrow another mortgage loan and other financing and emotional distress."  (Amend. Compl. at ¶ 89)

We hold that Plaintiffs' first theory of recovery, based on the loan servicing companies' alleged erroneous reports to various credit bureaus, is preempted by FCRA but the second theory is not.

The FCRA requires furnishers of credit information to provide consumer reporting agencies with accurate data.  *See* 15 U.S.C. §§ 1681 et seq.  The statute contains two separate preemption provisions.  Section 1681t(b)(1)(F) provides: "[n]o requirement may be imposed under the laws of any State– *with respect to any subject matter regulated under . . . section 1681s-2 of this title*,[17] relating to the responsibilities of furnishers of information to consumer reporting agencies . . . ."

---

[16]  Plaintiffs complain that Aurora and MERS "misrepresent[ed] the amounts due from Plaintiffs," "attempt[ed] to charge Plaintiffs excessive charges," and "insist[ed] Plaintiffs tender amounts they did not owe after their Chapter 7 discharge."  (Opp. Br. at 31)  The Court considers these allegations together as allegedly wrongful attempts to collect on Loan Two.

[17]  15 U.S.C. § 1681s-2 establishes the "Responsibilities of furnishers of information to consumer reporting agencies" in "[r]eporting of information with actual knowledge of errors," and their "[d]uty to correct and update information," among other things.

(emphasis added).  Section 1681h(e) provides, "no consumer may bring any action or proceeding in the nature of . . . *negligence with respect to the reporting of information* against any . . . person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."  (emphasis added).

The plain language of both preemption provisions indicates that FCRA only bars certain state law claims arising out of actions taken in connection with consumer credit reporting.[18] Plaintiffs' negative credit ratings and inability to obtain other financing are damages flowing from Aurora and MERS' alleged Loan Two delinquency reports to credit bureaus.  Such conduct is regulated by FCRA and is therefore preempted by FCRA.  *See DiPrinzio v. MBNA Bank, N.A.*, No. 04-872, 2005 U.S. Dist. LEXIS 18002 at *23 (E.D. Pa. Aug. 24, 2005) (plaintiff's claim under Pennsylvania's Consumer Protection Law arising out of defendant's alleged erroneous credit reporting was preempted by FCRA); *Jamarillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (holding that action under Pennsylvania's Consumer Protection Law arising out of allegedly false credit reporting was preempted by FCRA).

---

[18] *See also Davis v. Md. Bank, N.A.*, No. 00-04191, 2002 U.S. Dist. LEXIS 26468, 38-39 (N.D. Cal. June 19, 2002) ("Neither the Ninth Circuit nor any other Circuit Court of Appeal has defined the scope of the preemption under the FCRA. However, the majority of district courts have held that the FCRA preempts both state statutory and common law causes of action *which fall within the conduct proscribed under section 1681s-2(1).*") (emphasis added).

However, Plaintiffs contend that Aurora and MERS did more than just report to credit bureaus that Plaintiffs were delinquent on their Loan Two payments.  Plaintiffs' second theory of recovery alleges that Aurora and MERS wrongfully attempted to collect on Loan Two after Plaintiffs' bankruptcy discharge. These actions fall squarely outside the conduct regulated by FCRA and as such, the state law claims based on these actions are not preempted by FCRA.[19]  *Cf. Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000) ("the negligence claims encompass Ameritech's alleged breach of duty committed by opening accounts based on stolen information, actions not regulated by the FCRA.  Therefore the court concludes that these common law causes of action are not preempted.").

Because Plaintiffs' state law claims based on the loan servicing companies' alleged wrongful attempts to collect on Loan Two are not preempted, we must consider whether Plaintiffs have sufficiently pled claims of negligence / intentional tort, breach of contract,[20] and violations of NJ CFA based on this second theory.

To satisfy pleading requirements for all three claims,

---

[19]   Alternatively, even if Section 1681h(e) did apply to preempt claims based on conduct not regulated by the FCRA, we hold that for purposes of this Rule 12(b)(6) motion, Plaintiffs have sufficiently pled willfulness and malice to come within Section 1681h(e)'s exception with respect to their negligent servicing claim.

[20]   The nature of the contract claims against Aurora and MERS are not entirely clear, as Plaintiffs do not explain how the loan servicing companies are parties to the Note and Mortgage Agreement for Loan 2.

Plaintiffs must plead damages resulting from the wrongful
conduct.[21]  Plaintiffs claim they "suffered damages including the
loss of their home, negative credit ratings on their credit
reports, the inability to obtain and borrow another mortgage loan
and other financing and emotional distress."  (Amend. Compl. at ¶
89)

First, as explained above, Plaintiffs' negative credit
rating and inability to obtain other financing, are damages
flowing from alleged conduct regulated by the FCRA.  Thus
recovery under state law theories is preempted.  Moreover, under
no logical set of circumstances could Plaintiffs have suffered
those damages as a result of Aurora and MERS allegedly
misrepresenting to Plaintiffs the amounts due from them,
attempting to charge Plaintiffs excessive charges, or insisting
Plaintiffs tender amounts they did not owe after their Chapter 7
discharge.  Plaintiffs only suffered damages to the extent Aurora

---

[21]  *See Tumi v. Excel Corp.*, No. 05-0477, 2005 U.S. Dist. LEXIS 16027 at
*7-8 (D.N.J. Aug. 1, 2005) ("In a breach of contract action, a plaintiff
satisfies its pleading requirements if it alleges: (1) a contract; (2) a
breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff
performed its own contractual duties."); *Optica, Inc. v. Metro Pub.
Adjustment, Inc.*, No. 03-5065, 2005 U.S. Dist. LEXIS 15281 at *45 (D.N.J. July
21, 2005) ("Under New Jersey law, three elements are essential for the
existence of a cause of action in negligence: (1) a duty of care owed by
defendant to plaintiff; (2) a breach of that duty by defendant; and (3) an
injury to plaintiff proximately caused by defendant's breach."); N.J.S.A.
§ 56:8-19 ("Any person who suffers any ascertainable loss of moneys or
property, real or personal, as a result of the use or employment by another
person of any method, act, or practice declared unlawful under this act . . .
may bring an action . . . therefor in any court of competent jurisdiction.");
*Levy v. Edmund Buick-Pontiac*, 270 N.J. Super. 563, 567 (N.J. Super. Ct. 1993)
("Only a person who sustains an ascertainable loss as the result of
defendant's prohibited conduct, i.e., a loss proximately caused by defendant,
may recover treble damages.").

23

and MERS reported their collection efforts to credit bureaus--
conduct which is regulated by the FCRA.

Second, while Plaintiffs claim that they lost their home as
a result of Aurora and MERS's attempts to collect on Loan Two,
that conclusion is logically inconsistent with the facts pled.
Plaintiffs surrendered their home during their bankruptcy
proceedings, yet they allege Aurora and MERS wrongfully attempted
to collect on Loan Two *after* their debts were discharged in
bankruptcy.  (*See* Amend. Compl. at ¶¶ 1, 72-73, 118, 133)

Third, Plaintiffs are not entitled to recover damages for
emotional distress under NJ CFA.  *Cole v. Laughrey Funeral Home*,
376 N.J. Super. 135, 152 (App. Div. 2005) ("the emotional
injuries alleged constitute non-economic damages that are not
recoverable under the CFA").  Accordingly, the NJ CFA claim
against Aurora and MERS (Count VII) must be dismissed because
Plaintiffs have pled no theory or recoverable damages.

With regard to the remaining claims (Counts III and V), the
Court is left to decide whether pleading only emotional distress
damages resulting from the wrongful attempts to collect on Loan
Two suffices for purposes of this Rule 12(b)(6) motion.

Plaintiffs' emotional distress claims are highly fact
sensitive.  As such, they are ill-suited for dismissal at this
early stage.  While Plaintiffs may face an uphill battle in
establishing their emotional distress claims under any common law

24

theory (be it negligence, intentional tort, or contract),[22] we hold that under liberal notice pleading standards, they have sufficiently pled emotional distress damages resulting from the loan servicing companies' alleged wrongful attempts to collect on Loan Two.

Accordingly, to the extent Plaintiffs seek recovery for common law emotional distress resulting from the loan servicing companies' alleged wrongful attempts to collect on Loan Two, the motion to dismiss Counts III and V must be denied.

---

[22] *See Carlino v. Gloucester City High Sch.*, 57 F. Supp. 2d 1, 29 (D.N.J. 1999) ("'To recover on a claim for either intentional or negligent infliction of emotional distress, [a] plaintiff is required to show, among other things, that she has suffered emotional distress so severe that no reasonable man could be expected to endure it.' *Schillaci v. First Fidelity Bank*, 311 N.J. Super. 396, 406 (N.J. Super. Ct. App. Div. 1998) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366-67 (1988) (quoting Restatement (Second) of Torts § 46, cmt. j (1965))). . . . 'unless a plaintiff's alleged distress is truly genuine and substantial, the tort of negligent infliction of emotional distress should not be broadened to permit recovery of damages.' *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 430 (1989).").

**IV.**

For the foregoing reasons, the Court will grant the motion of Aurora and MERS to (1) dismiss Count VII (NJ CFA claim) and (2) dismiss the state law claims (Counts III, V, and VII) to the extent that Plaintiffs' claims are premised on injuries resulting from reporting to credit agencies or loss of their home. Defendants' Motion to Dismiss will be denied in all other respects.  The Court will issue an appropriate order.


Date: January <u>25th</u>, 2006

                                    s/Joseph E. Irenas
_____
                                    JOSEPH E. IRENAS, S.U.S.D.J.

26